IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VALDEZ LAMONT JORDAN, #B29482,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**JOHN BARWICK,** )<br>**CHRISTINE BROWN,** )<br>**PERCY MYERS, and** )<br>**BOB PLUM,** )<br>)<br>**Defendants.** ) | Case No. 24-cv-02125-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Valdez Lamont Jordan, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims delays in diagnosing and treating his painful throat condition violate his constitutional rights. (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): While Plaintiff was incarcerated at Lawrence Correctional Center in June 2022, he developed a painful sore throat, difficulty swallowing, and a feeling that something was stuck in his throat (Doc. 1, pp. 1, 5). He sought medical care, and a blood test showed abnormal results, but Plaintiff received no treatment

1

for his throat problems.

Plaintiff was transferred to Pinckneyville Correctional Center in April 2023 (Doc. 1, p. 6). He learned from Defendant Plum (Nurse Practitioner) in May 2023 that he tested positive for the H. Pylori bacterium, which could be causing his throat pain. Plaintiff completed the course of medication for H. Pylori, which relieved his throat pain for a week, but the feeling of something stuck in his throat never went away, and the burning in his throat returned (Doc. 1, p. 7).

Plaintiff consulted Defendant Dr. Myers in June 2023, and reported he had suffered from throat pain for nearly a year without diagnosis. Dr. Myers said he would order a CT scan and another H. Pylori test. After a delay, in July 2023, Plum informed Plaintiff his H. Pylori test came back negative but refused to address the issue (Doc. 1, pp. 7-8).

Plaintiff submitted more health care requests for a lump at the base of his throat and worsening pain. On August 10, 2023, Dr. Myers denied Plaintiff's request for nutritional supplements to address his loss of weight and lack of energy (Doc. 1, pp. 8-9).

In September 2023 and again in November 2023, a physician's assistant prescribed Prilosec and saline nasal spray for suspected acid reflux. Plaintiff took the medication but got no relief (Doc. 1, pp. 9, 12). Plaintiff had the CT scan of his head and neck on October 6, 2023, which showed an "oval mass-like process[1]…in the subcutaneous soft tissues of the occiput" but no acute abnormalities within the nasopharynx, tonsils, tongue base, epiglottis, piriform sinuses, parotid, or submandibular glands, or lymph nodes (Doc. 1, p. 9). Plaintiff's throat symptoms continued to worsen and in October 2023, a blood test showed low kidney function and other abnormal results (Doc. 1, p. 10).

In November 2023 (and continuing to the present), Plaintiff's throat pain became so bad

---

[1] This mass was a separate issue from Plaintiff's throat problems; he earlier referred to a "mass on [his] head" which was diagnosed by an ENT specialist in January 2024 as a tumor (Doc. 1, pp. 7, 12).

that he wanted to dig his fingers into his throat and "snatch out his insides" (Doc. 1, pp. 1, 12). He saw an ENT specialist in January 2024 for the mass on the back of his head. This specialist briefly examined Plaintiff's throat but saw nothing.

Plaintiff saw an outside GI specialist on February 8, 2024 regarding his throat condition and chronic gnawing stomach pain which had continued since November 2023 (Doc. 1, pp. 12-13). This specialist recommended an EGD and colonoscopy but required a cardiologist consultation before performing those tests. Plaintiff's blood tests showed his kidney function had dropped further and several other results were out of normal range.

On April 3, 2024, Plaintiff wrote to Defendant Brown (Health Care Unit Administrator) seeking to schedule the EGD and unrelated surgeries but received no response (Doc. 1, p. 14). He wrote Brown about the EGD/endoscopy and colonoscopy again on May 8, 2024, and asked to have the procedure without sedation (making the cardiology consult unnecessary). Brown responded that the GI specialist would not perform the EGD/endoscopy without cardiac clearance and Plaintiff would see the cardiologist in the next couple weeks (Doc. 1, p. 15). Plaintiff's difficulty swallowing and throat pain worsened to the point he could hardly eat. He sought emergency assistance from Plum on May 16, 2024, but was told nothing could be done without the cardio consult.

Plaintiff saw the cardiologist on May 23, 2024, and was cleared for sedation for the EGD and colonoscopy (Doc. 1, p. 16). Dr. Myers submitted these procedures for collegial review and informed Plaintiff it would take about a month to schedule the GI visit. Plaintiff submitted a grievance on May 27, 2024, and an emergency health care request on June 4, 2024, seeking to have these procedures declared urgent due to his severe symptoms. This grievance and Plaintiff's earlier grievance were deemed by Defendant Warden Barwick to be emergencies (Doc. 1, pp. 13,

3

17).  Plaintiff was told the colonoscopy was scheduled for early August 2024.  A soft diet was prescribed but did not help ease Plaintiff's pain.  Plaintiff has not seen or been scheduled for the GI specialist visit.

Plaintiff's throat pain, feeling of obstruction, and difficulty swallowing have persisted for over two years.  These problems make it difficult for Plaintiff to eat or sleep, he has stomach pain, and the pain is travelling to his ears.  His blood test results over time show his health is diminishing.  All defendants have been aware of his painful medical conditions which may be life threatening, but they have failed to provide him with diagnosis or treatment, in violation of the Eighth Amendment.  He seeks injunctive relief to be immediately sent to a specialist qualified to diagnose and treat his throat pain and stomach issues, and money damages (Doc. 1, p. 20; Doc. 2).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1:    Eighth Amendment deliberate indifference to serious medical needs claim against Barwick, Brown, Myers, and Plum for delaying and denying adequate medical care and diagnostic referrals for Plaintiff's severe and painful throat and stomach symptoms.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical

4

needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Here, the allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 1 against the defendants.

## Injunctive Relief

Warden John Barwick, in his official capacity, is the proper defendant to implement any injunctive relief that may be ordered. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out). Plaintiff's claim will also proceed against Barwick in his individual capacity.

## Motion for Emergency Preliminary Injunction (Doc. 2)

Plaintiff's motion for preliminary injunctive contains the allegations as in the Complaint, and will not be repeated here. He seeks an order requiring the defendants to immediately send him to a qualified specialist for diagnosis and treatment of his chronic throat pain and stomach condition.

A preliminary injunction may issue only after the adverse party is given notice and an opportunity to respond. *See* FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S.

7, 20 (2008) (citations omitted); *Korte v Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). Defendants must be given an opportunity to file a response before the Court can resolve Plaintiff's motion. Accordingly, Warden Barwick, in his official capacity, may respond to the motion for injunctive relief **within 14 days** of returning an executed waiver of service of process. The Court will then review the response and determine whether a hearing on the motion is necessary.

### Motion for Recruitment of Counsel (Doc. 4)

Plaintiff's Motion for Recruitment of Counsel (Doc. 4) is **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, Plaintiff has not established any efforts made to obtain counsel on his own. He states that he wrote to one law firm and intends to contact others, but did not include any responses with his motion. Moreover, at this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so recruitment of counsel would be premature. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged.").

Should Plaintiff encounter difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he renews his request, he should submit at least 3 rejection letters from attorneys to show that he has made reasonable efforts to obtain counsel on his own.

### Disposition

The Complaint states colorable claims in Count 1 against Barwick, Brown, Myers, and

Plum.

The Clerk shall prepare for John Barwick, Christine Brown, Percy Myers, and Bob Plum: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, a copy of the Motion for Emergency Preliminary Injunction (Doc. 2) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  September 10, 2024**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.