IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VALDEZ LAMONT JORDAN, #B29482, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24-cv-02125-SMY |
| | ) |
| JOHN BARWICK, | ) |
| CHRISTINE BROWN, | ) |
| PERCY MYERS, and | ) |
| BOB BLUM, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendants John Barwick and Christine Brown on the issue of failure to exhaust administrative remedies (Doc. 36). Plaintiff Valdez Lamont Jordan opposes the motion (Doc. 39). For the following reasons, the motion is **DENIED.**[1]

## BACKGROUND

Plaintiff filed this this *pro se* civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights that occurred at Pinckneyville Correctional Center (Doc. 1).[2] He makes the following allegations in the Complaint: While Plaintiff was a prisoner at Lawrence Correctional Center in June 2022, he developed a painful sore throat, difficulty swallowing, and felt as if something was stuck in his throat (Doc. 1, pp. 1, 5). He had a blood test that showed abnormal results. He received no treatment for his throat symptoms.

---

[1] Given the undisputed material facts, the Court concludes that it is not necessary to hold a hearing on the exhaustion issues raised in Defendants' motion.
[2] Plaintiff is currently incarcerated at Graham Correctional Center (Doc. 40).

1

In April 2023, Plaintiff was transferred to Pinckneyville Correctional Center (Doc. 1, p. 6). Defendant Nurse Practitioner Blum informed Plaintiff that he tested positive for the H. Pylori bacterium and that it could be the cause of his symptoms. Plaintiff completed the course of medication for H. Pylori. His throat pain went away for a week, but his symptoms of feeling something stuck in his throat and a burning sensation returned (Doc. 1, p. 7).

Plaintiff saw Defendant Dr. Percy Myers in June 2023 and informed Dr. Myers he had suffered from throat pain for nearly a year without having a diagnosis. Dr. Myers ordered another H. Pylori test and said he would order a CT scan. In Jul 2023, Plaintiff learned the H. Pylori test was negative; Dr. Myers did not further address his symptoms (Doc. 1, pp. 7-8).

Plaintiff saw Dr. Myers on August 10, 2023, after he submitted more health care requests to address a lump at the base of his throat and increased pain. Dr. Myers denied Plaintiff's request for nutritional supplements for his weight loss and lack of energy (Doc. 1, pp. 8-9).

Plaintiff obtained Prilosec and saline nasal spray from a physician's assistant in September 2023 and November 2023, but they did not relieve his symptoms (Doc. 1, pp. 9, 12). On October 6, 2023, he had a CT scan of his head and neck, which showed an "oval mass-like process[3]…in the subcutaneous soft tissues of the occiput" but no acute abnormalities within the nasopharynx, tonsils, tongue base, epiglottis, piriform sinuses, parotid, or submandibular glands, or lymph nodes (Doc. 1, p. 9). His throat symptoms worsened and a blood test in October 2023 showed low kidney function and other abnormal results (Doc. 1, p. 10). In November 2023 and at the time he filed his Complaint, Plaintiff's throat pain was so bad that he wanted to dig his fingers into his throat and "snatch out his insides" (Doc. 1, pp. 1, 12).

On February 8, 2024, Plaintiff saw an outside GI specialist for his throat condition and

---

[3] This mass was a separate issue from Plaintiff's throat problems; he earlier referred to a "mass on [his] head" which was diagnosed by an ENT specialist in January 2024 as a tumor (Doc. 1, pp. 7, 12).

chronic stomach pain dating back to November 2023 (Doc. 1, pp. 12-13). The specialist recommended an EGD and colonoscopy but required a cardiologist consultation before performing those tests. Plaintiff's blood tests showed his kidney function had dropped further and several other results were out of normal range.

On April 3, 2024 and May 8, 2024, Plaintiff wrote to Defendant Christine Brown seeking to schedule the EGD, endoscopy, and colonoscopy. Brown responded that cardiac clearance was needed before these tests and he should see a cardiologist in the next couple weeks (Doc. 1, p. 15). Plaintiff's throat symptoms worsened to the point he could hardly eat. Plaintiff sought emergency assistance from Blum on May 16, 2024. Blum told him nothing could be done before the cardio consult.

Plaintiff saw the cardiologist on May 23, 2024 and obtained clearance for the EGD and colonoscopy (Doc. 1, p. 16). Dr. Myers told Plaintiff it would take about a month to schedule the GI visit and submitted a request for collegial review. Plaintiff submitted a grievance on May 27, 2024 and an emergency health request on June 4, 2024 seeking urgent care. Defendant Warden Barwick approved the grievance for emergency handling (Doc. 1, pp. 13, 17). Plaintiff was told the colonoscopy was scheduled for early August 2024, but it had not been performed at the time Plaintiff filed this action on September 4, 2024, nor had he seen a GI specialist.[4]

Following threshold review, Plaintiff is proceeding on the following claim (Doc. 11):

Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Barwick, Brown, Myers, and Blum for delaying and denying adequate medical care and diagnostic referrals for Plaintiff's severe and painful throat and stomach symptoms.

---

[4] On October 16, 2024, the Court granted Plaintiff's motion for a preliminary injunction, ordering Defendants to schedule Plaintiff for appointments to undergo the EGD and colonoscopy procedures (Docs. 28, 29). Defendants notified the Court that Plaintiff underwent those procedures on October 29, 2024, was scheduled for an ENT appointment in late November 2024, and was given a course of antibiotics (Docs. 30, 32).

**Relevant Grievances**

Defendants Barwick and Brown identify two grievances relevant to Plaintiff's claims (Doc. 37, pp. 2-4):

*Grievance No. K59-0324-837 dated March 7, 2024*

Plaintiff filed this grievance as an emergency. Warden Christel Crow approved emergency processing on March 8, 2024 (Doc. 37-2, pp. 10-11, 13). Plaintiff sought immediate follow-up treatment for several ongoing medical problems including a tumor on his head that he wanted surgically removed, and untreated/undiagnosed kidney, stomach, and throat pain. Plaintiff stated "HCU staff" knew he had been complaining about stomach and throat pain for several months; he had been requesting treatment since January 2024 but got no response unless he filed a grievance. He believed his health problems could be due to the prison's nutritionally inadequate diet.

The grievance was denied on March 22, 2024 and included the HCUA's (Health Care Unit Administrator) response stating Plaintiff had been seen several times on nurse sick call (NSC) for his stomach/kidney pain (Doc. 37-2, p. 9). Plaintiff was to be "put back on the med line for the doctor." *Id.* Defendant Warden Barwick concurred with the denial of the grievance (Doc. 37-2, p. 9; Doc. 39, pp. 2, 10). Plaintiff wrote to the Administrative Review Board ("ARB") on May 1, 2024, detailing his efforts to seek medical care for the issues raised in his grievance and disputing statements made in the Pinckneyville officials' response (Doc. 37-2, p. 12). The ARB denied Plaintiff's appeal on May 16, 2024 (Doc. 37-2, p. 8).

*Grievance No. K59-0524-1837 dated May 27, 2024*

This grievance was marked and treated as an emergency (Doc. 37-2, p. 5). Plaintiff stated he had a consultation with a cardiologist on May 23, 2024, who determined he could be sedated for the EGD and colonoscopy procedures with a GI specialist. The same day, Plaintiff spoke with

Defendant Dr. Myers seeking urgent treatment for his throat pain and difficulty swallowing, which had persisted since June 2022 (Doc. 37-2, pp. 5-6). He asked for an urgent recommendation from the collegial review members to obtain the EGD and colonoscopy procedures.

The grievance was denied by Defendant Barwick on June 4, 2024, based on the HCUA's response that Plaintiff's colonoscopy appointment had been scheduled for early August (Doc. 37-2, p. 4). The ARB denied Plaintiff's appeal on July 26, 2024 (Doc. 37-2, p. 3).

## **DISCUSSION**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *see also Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

For a prisoner to properly exhaust his administrative remedies, he or she must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *Chambers v. Sood*,

5

956 F.3d 979, 984 (7th Cir. 2020); *see* also *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because Plaintiff was an IDOC inmate when he filed this action, he was required to follow the grievance process set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the Chief Administrative Officer ("CAO") at his facility. "A grievance must be filed...within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). A grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the prisoner does not know a person's name, he "must include as much descriptive information about the individual as possible." *Id.*

If an inmate is unsatisfied with the outcome at the facility, he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures further allow for an inmate to file an emergency grievance; to do so, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILL. ADMIN. CODE § 504.840(a). After such a determination, processing of the grievance is expedited, as is any appeal. 20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f).

An inmate is required to exhaust only those administrative remedies that are available to him. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees

thwart a prisoner from exhausting. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

Here, Defendants argue neither of Plaintiff's grievances was sufficient to exhaust his claims against them because the grievances did not contain Barwick or Brown's name or a description of them (Doc. 37, pp. 6-7). They contend the mention of "HCU staff" was not enough to alert the prison to any complaints regarding Defendant Brown, the Health Care Unit Administrator, because she was not responsible for providing any medical treatment to Plaintiff, nor did Plaintiff allege that Brown provided him with treatment. *Id.*; (*see also* Doc. 31, pp. 3-4).

A procedural deficiency, such as the omission of an official's name, "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Maddox v. Love*, 655 F.3d 709, 721-722 (7th Cir. 2011) (internal citations omitted). "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Id.* at 722.

In this case, Plaintiff's grievances were addressed on their merits and no issue was raised at any level of the process regarding the omission of individuals' names. Moreover, Defendants Brown and Barwick were directly involved in responding to, and denying, Plaintiff's grievances. Thus, they were aware of Plaintiff's complaints, and had an opportunity to take corrective action.

In sum, Defendants Brown and Barwick have not met their burden to prove that Plaintiff failed to exhaust his administrative remedies before filing suit.

## DISPOSITION

The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Barwick and Brown (Doc. 36) is **DENIED**.

The matter of exhaustion of administrative remedies now being resolved, the stay on merits

discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. The Court will enter a separate scheduling order setting discovery and dispositive motion deadlines.

    **IT IS SO ORDERED.**

    **DATED: September 22, 2025**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**
